IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DELLACE HOLTEN ) | |
| ) | |
| Plaintiff, ) | Case No. 02 C 50201 |
| ) | |
| vs. ) | Magistrate Judge |
| ) | P. Michael Mahoney |
| CITY OF GENOA, Officer JOHN KLINK, & ) | |
| Officer ROBERT SMITH ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

I. INTRODUCTION

A jury decided this case in favor of Plaintiff in the amount of $260,000.00 on September 29, 2011. Before the court is Defendants' timely filed motion for judgment as a matter of law, or alternatively, to vacate judgement on the jury verdict and for a new trial.

II. BACKGROUND

Plaintiff's initial complaint, filed on May 22, 2002, alleged claims for excessive force and failure to intervene under 42 U.S.C. § 1983, in addition to state law claims for battery, respondeat superior, and indemnification. The complaint alleged that the Defendant Officers shot Plaintiff without justification or provocation while Plaintiff laid unarmed in an automobile.

On July 8, 2003, Judge Reinhard denied a motion to dismiss filed by Defendants. Shortly thereafter, Plaintiff filed an amended complaint alleging that Defendants engaged in retaliatory criminal prosecution of Plaintiff in response to his filing of this suit.


This case was plagued by a number of extended delays, including Plaintiff's incarceration, a key witness being called to military duty overseas, and substitutions of counsel by both parties. The parties consented to the jurisdiction of the Magistrate Judge, and the case was transferred by the District Court on June 9, 2008. Each party filed a number of motions in limine, on which the court heard oral argument on November 8, 2008. The court granted in part and denied in part both parties' motions in an 18-page Memorandum Opinion and Order from November 24, 2008. Defendants now challenge a number of the court's decisions on the motions in limine, which are more fully discussed below. Ultimately, the case was set for a jury trial to begin on September 26, 2011 on Plaintiff's claims for excessive force and failure to intervene.

At trial, Defendants introduced evidence that Defendant Smith attempted to effect a traffic stop in Genoa, Illinois, when Plaintiff fled. Plaintiff testified that he was in fear for his life because the car that pulled up behind him was an unmarked vehicle and the driver announced an intent to shoot him. The evidence showed that the chase proceeded for approximately 11 minutes into rural DeKalb and Ogle Counties. Nearly all of the chase was recorded on a video that was shown to the jury. Defendants Smith and Klink, along with responding officers from other departments, attempted to stop Plaintiff using "stop sticks" without success.

Eventually, Plaintiff began to run out of gas and he drove off the road to avoid a tractor. At that point, the parties agree that Plaintiff drove onto a property owned by the Wittwer family and proceeded to park the car in a small garage-like structure. It is at this point that the testimony and evidence between the parties diverged. Plaintiff testified that Defendant Smith

was somewhere behind his vehicle, and that Defendant Klink was in the garage. Plaintiff told the jury that he attempted to get the car out of the garage because the officers shot at him, but his vehicle was blocked in by Defendant Klink's squad car. At that point, according to Plaintiff, he was attempting to surrender when the Defendant Officers again opened fire. The testimony of Defendants Klink and Smith painted a different picture with regard to their positioning and the timing of the shots fired. Officer Klink testified that he was attempting to get Plaintiff to surrender from just outside the garage when Plaintiff put his vehicle in reverse and attempted to drive the car in a way that could injure or kill the Defendants. Each Officer testified that he only opened fire when he was in fear for his own life or the life of the other. Plaintiff was struck three times by the Defendants' bullets. He was transferred to an area hospital but survived.

In addition to the testimony from the key witnesses to the events, the jury heard testimony from a number of experts and investigating witnesses. Plaintiff's expert, Mr. Brundage, is a ballistics expert who testified regarding the likely trajectory of the bullets. Mr. Brundage's testimony tended to support Plaintiff's description of events and undermined the Defendants' testimony as to their locations at the time shots were fired. Plaintiffs also called Mr. Rangel, a field supervisor for the crime scene services command. Defendants' presented as a witness the case agent for this incident, Mr. Costliow, who testified as to his findings of how the events unfolded at the scene of the shooting. His report and testimony tended to support Defendants' description of events.

At the close of Plaintiff's case, counsel for Defendants presented to the Court an oral Rule 50 Motion for Directed Verdict on both of Plaintiff's claims, because Plaintiff had failed to prove by a preponderance of credible evidence that excessive force was used by the Defendants.

The Court denied Defendants' Motion for Directed Verdict on September 29, 2011. At the close of the trial, the jury deliberated for nearly eight hours prior to reaching a verdict in Plaintiff's favor. The court entered judgment on September 29, 2011. On October 27, 2011, Defendants filed their motion for judgment notwithstanding the verdict or alternatively to vacate the judgment entered on the jury verdict and for a new trial.

### III. DISCUSSION

Defendants' motion for judgment notwithstanding the verdict is based on Rules 50(a) and (b) of the Federal Rules of Civil Procedure. Because the court denied Defendants' motion for a directed verdict under Rule 50(a) at trial, Defendants are entitled to file a renewed motion. Fed. R. Civ. P. 50(b). In ruling on the motion, the court may allow the judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law after the jury returns a verdict. *Id.*

In deciding a Rule 50(b) motion, "the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir.2000). There must have been more than a mere scintilla of evidence to support the verdict. *Id*. Evidence and inferences drawn therefrom are taken in the light most favorable to the party against whom the motion is directed. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir.1993). The court employs fundamentally the same standard as that used in deciding a motion for summary judgment. *Massey*, 226 F.3d at 924. As the Seventh Circuit has described, the court should not overturn a jury verdict lightly. *Id*. At 925.

Rule 59(a) allows the court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in a action at law in federal court." Fed. R. Civ. P.

59(a)(1)(A). The court has broad discretion in determining whether to grant a new trial. *McNabola*, 10 F.3d at 516. The jury should be afforded greater deference in cases where the issues are simple but the facts are highly disputed. *Latino et al. v. Kaizer et al.*, 58 F.3d 310, 314 (7th Cir. 1995). The court should only grant a new trial under Rule 59 where "the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino*, 58 F.2d at 315.

As a part of their motion, Defendants argue that the court made up to six distinct errors that merit reversal. In addition, Defendants believe they are entitled to judgment as a matter of law because there was no evidence of excessive force in this case. The court will address each argument in turn.

First, Defendants argue that the court limited voir dire in a way that prevented Defendants from "intelligently exercising their peremptory challenges and from evoking information that could have led to challenges for cause." Noting that Defendants were limited to less than one minute of questioning per juror to conduct *vior dire*, Defendants urge the court to find they were so limited that they could not effectively contribute to picking an impartial jury. Defendants rely on two Seventh Circuit cases for the proposition that the court's use of "stock questions" with the potential jurors was insufficient to create a reasonable assurance that prejudice would be discovered if present. *See Art Press, Ltd. v. Western Printing Machinery Co.*, 791 F.2d 616, 618 (7th Cir. 1986); *Feitzer v. Ford Motor Co.*, 622 F.2d 281, 286 (7th Cir. 1980).

The court has broad discretion to limit the *voir dire* of potential jurors so long as it does not deprive the parties of their right to an impartial jury. *Feitzer*, 622 F.2d at 284. The *voir dire*

5

in this case does not run afoul of the standards derived from the *Art Press* or *Feitzer* decisions. The *Feitzer* case involved a suit for damages against an automaker because a design defect caused a particular vehicle to burst into flames when struck in the rear. *Id.* at 283. According to the Seventh Circuit, the trial court erred by failing to ask certain case-specific questions requested by the defendants, including whether any of the jurors had read a recent front-page newspaper article about the case. *Id.* at 285-86. In the *Art Press* case, the Seventh Circuit found error with the trial court's decision to limit questioning to "stock questions" about the venirepersons' identities plus a general question about whether each juror could be impartial. *Art Press*, 791 F.2d at 619. It does not appear that the attorneys for either party were allowed to ask questions of the venirepersons. *Id.*

Here, the court asked specific questions of the venirepersons regarding their personal relationships with law enforcement officers. Based on each potential juror's answer, the court occasionally asked detailed follow-up questions regarding his or her dealings with law enforcement. (Trial Tr. 52:12-25; 53: 1-12.) The court also allowed the parties to question the potential jurors. Plaintiff's counsel indicated that he was satisfied with the court's questions. Mr. Kujawa questioned the venirepersons on behalf of the Defendants, and asked a number of fact-specific questions relating to this case. Examples of Mr. Kujawa's specific questions include the following:

> MR. KUJAWA: Okay. Sometimes unfortunately for police officers, when they deal with people, they're dealing with them in a negative aspect, whether they're stopping them for a traffic violation or something's happened, their car was stolen or damaged, something like that. So, oftentimes they see them in a bad situation. Does anybody in the group here, have you ever had a negative meeting, a negative interaction with a police officer or law enforcement officer of any kind? (*Id.* 31:9-16.);

and

> MR. KUJAWA: The plaintiff in this case, Mr. Dellace Holten, is just an individual, and we represent the City of Genoa and two police officers for the City of Genoa. Does anyone feel that somehow that's unfair because we're representing a municipality and some officers against one person? Does anyone think that they might favor the individual in that particular situation? (*Id.* 33:8-14.)

Mr. Kujawa was allowed to follow-up with questions about any specific interaction, positive or negative, that any potential juror had with law enforcement. (*Id.* 31:1-25; 32:1-16.)

The court received no objections from the parties with regard to the *voir dire* process. Based on the foregoing, the court finds it used reasonable discretion to create a process that allowed the parties to obtain a fair and impartial jury. Plaintiff's motion for a new trial pursuant to Rule 59 is denied with regard to the *voir dire* process.

Defendants make a number of arguments relating to evidentiary questions on which the court has already written a memorandum opinion. Defendants believe it was reversible error for the court to exclude evidence of Plaintiff's prior drug use and alleged retail thefts that took place earlier in the day on the date this incident occurred. The court issued a Memorandum Opinion and Order on November 24, 2008, rendering decisions on the parties' motions in limine and disposing of the above issues prior to trial. (Mem. Op. & Order, Dkt. No. 130-2, p. 6.) As to the prior drug use, the court found the prejudicial effect to outweigh any probative value based on a complete lack of evidence that Plaintiff's earlier use of drugs had any affect on his ability to perceive or remember events. (*Id.*) Regarding the alleged retail thefts, the court found the information irrelevant, unproven, and inadmissible. (*Id.*)

Defendants believe Plaintiff "opened the door" to this information coming into evidence when he testified about what he perceived when Officer Smith first attempted to pull him over.

7

Defendants argue that allowing this evidence to be introduced would have given the jury a more balanced factual representation of the incident and allowed Defendants to impeach Plaintiff's version of events. As the court found previously, the officers had no knowledge of the alleged thefts or drug use, and there is no indication that Plaintiff was under the influence at the time of the incidents that give rise to this case. To the extent Defendants believe they were prejudiced, the court notes that they were allowed to use and introduce evidence that Plaintiff believed there had been a crack pipe in the car at the time he fled police. Defendants had at their disposal evidence that could be used to question Plaintiff's motives for fleeing and attack credibility. The court stands on its prior opinion, and reaffirms its finding that the prejudicial effect outweighs any probative value.

Defendants also believe it was reversible error for the court to allow evidence that the Genoa Police Chief directed the pursuit to be terminated and that DeKalb County deputies were ordered to terminate their pursuit. The court addressed this evidentiary question in its Memorandum Opinion and Order when ruling on Defendants' first motion in limine. The court found the information to be probative of the mind set of the officers, relevant to the totality of the circumstances, and not unfairly prejudicial or misleading to the jury. (*Id.* at 10.) The court stands on its prior ruling.

In addition, Defendants claim the court erred in denying their motion for a directed verdict as to Plaintiff's failure to intervene claim, and by instructing the jury on the same. Defendants essentially argue that there was insufficient evidence adduced at trial to permit a finding that either Defendant Officer had a realistic and reasonable opportunity to intervene. Plaintiff points to evidence relating to the length of the high speed chase, a lack of warning shots

8

or shots to the tires of the vehicle, and evidence that Defendant Klink did eventually intervene to tell Defendant Smith to stop shooting. The court should not overturn a jury verdict unless it is contrary to the manifest weight of the evidence. *Cefalu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir. 2000). The jury was presented with the following non-exclusive list of evidence regarding the failure to intervene claim: (1) the car chase lasted at least 10 minutes according to video evidence and testimony (Trial Tr. 383:16-18.); (2) the Defendants communicated through radios in their vehicles (*Id.* at 383:10.; 415:8; 428:24-25.); (3) Plaintiff testified that the Officers began shooting at his car prior to his attempt to escape the Wittwer garage (*Id.* at 169:14-15.); (4) Plaintiff's car may have been blocked from escaping the garage (*Id.* at 244:11-15.); (5) Defendant Smith testified that he checked to be sure Defendant Klink was not in a crossfire position before shooting (*Id.* at 192:2-7.); and (6) there was conflicting testimony and evidence throughout the trial as to where the Defendant Officers were when shots were fired; and (7) Defendant Klink instructed Defendant Smith to stop shooting at some point. (*Id.* at 173:11-12; 400:20-25.) Weighing the evidence in a light most favorable to Plaintiff, the court finds that there was a legally sufficient amount of evidence such that the jury could reasonably arrive at its verdict on Plaintiff's failure to intervene claim. *See McNabola*, 10 F.3d at 516.

Next, Defendants argue the court erred in denying their motion for a directed verdict on Plaintiff's claims of excessive force and failure to intervene. As to the failure to intervene claim, the court incorporates the non-inclusive list of facts from the preceding paragraph. Regarding the excessive force claim, Defendants emphasize that the Defendant Officers were forced to make split second judgments in a tense, uncertain, and rapidly evolving situation. Certainly, the court recognizes the need to consider the burden on law enforcement officers when determining

whether their use of force was reasonable. *See Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011). The Seventh Circuit has described a number of factors to be considered in performing a reasonable use of force analysis:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. We also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. In the end, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended.

*Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir.2000) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989); other internal quotation marks and citations omitted).

In considering the above factors, the court finds there to be more than a "mere scintilla" of evidence supporting the jury verdict. Regarding the severity of the crime at issue, the jury learned that the only violation the pursuing officers were aware of was Plaintiff's speeding violation. While Plaintiff did actively resist arrest by fleeing, the jury learned that attempts were made to call off the high speed chase. The jury was also charged with making credibility determinations about conflicting testimony as to how and when the Defendants shot at Plaintiff. Plaintiff's expert and the investigating officers each testified regarding their opinions of how and where the shots could have been fired. Defendants played a tape for the jury that appeared to show officer saying something along the lines of "stop or I will shoot" on a number of occasions during the chase. Plaintiff testified that he was attempting to surrender when the first shots were fired. (Trial Tr. 169:12-15.) Mr. Brundage testified extensively regarding his findings that a bullet was fired directly into the hood from the front of the vehicle, and his testimony was in

10

conflict with that of Defendant Klink. (*Id.* at 310-313; 395:20-25;396:1-7.) The above is merely a sampling of the factual questions presented to the jury. When considering all of the evidence in a light most favorable to Plaintiff, the court finds that the jury's verdict was supported by a legally sufficient amount of evidence and therefore reaffirms its decision denying Defendants' motion for a directed verdict.

Finally, Defendants believe the court committed reversible error by allowing Plaintiff's expert, Mr. Brundage, to testify. Defendants argue that the court failed to perform its gatekeeping function under *Daubert et al. v. Merell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). The *Daubert* framework indicates that the court should evaluate the reliability of the expert's testimony, and then determine whether the testimony "will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592-93. The court previously addressed Defendants' challenges to Mr. Brundage's proposed testimony in its Memorandum Opinion and Order of November 24, 2008. The court herein adopts its previous discussion and findings regarding the testimony of Mr. Brundage. (Mem. Op. & Order, Dkt. No. 130-2, pp. 12-17.)

However, the court does find it necessary to address Defendants' argument that Mr. Brundage's testimony should not have been allowed based on the conditional nature of the court's ruling on Defendants' motion in limine. In its Memorandum Opinion and Order, the court stated the following:

> Mr. Brundage's entire trajectory analysis rests on the assumption that Plaintiff was laying across the front seat in the Buick, with his back pressed flatly against the back of the seat. If Plaintiff was lying more toward the front of the seat, or if his body was twisted in a different position, the trajectory would be different. Absent testimonial confirmation from Plaintiff that the mannequin accurately represents

11

>his position in the car when he was shot, Mr. Brundage's technique is unreliable and fails the first prong of the Daubert framework. Until Plaintiff offers testimonial evidence as to his position in the car when he was shot, and further, that his position is the position of the mannequin, the court reserves judgment on Defendants' motion to bar Mr. Brundage's testimony as to the trajectories of the bullets. If Plaintiff fails to provide such testimonial evidence, the court will grant the motion.

(*Id.* at pp. 15-16.) Defendants re-introduced a challenge to the trajectory analysis testimony at trial based on a theory that Plaintiff's testimony did not conform Mr. Brundage's assumption regarding Plaintiff's position in the Buick. The court conducted a *voir dire* of Mr. Brundage outside the presence of the jury in order to aid in deciding whether he could present his trajectory analysis to the jury. During the *voir dire*, Mr. Brundage testified that he based his theory–and the placement of the mannequin–on Mr. Holten's wound locations, the police report, and a doctor's report. (Trial Tr. 291:25; 292:1-3.) Mr. Brundage also indicated that his theory allowed for a slight variance in Plaintiff's actual positioning. (*Id.* at 292:4-10.) After allowing the parties to question Mr. Brundage, the court held that the reasoning and methodology used by the expert was scientifically valid, and that his testimony would assist the trier of fact. (*Id.* at 298:12-20.) The court noted the existence of some factual questions regarding Plaintiff's position in the Buick, and indicated to Defendants that the court would be open to objections regarding a particular shot that came through the passenger window. (*Id.* at 298:14-15; 21-22.) The court did, in fact, sustain Defendants' objection regarding testimony about a photograph that showed Mr. Brundage's findings regarding the trajectory of a bullet about which Plaintiff's testimony was contradictory. (*Id.* at 315:10-24.)

The court finds that Mr. Brundage's testimony was reliable, helpful to the court and the jury, and properly allowed under the *Daubert* framework and Rule 702 of the Federal Rules of

Evidence.

## IV. CONCLUSION

For the foregoing reasons Defendants' motion for judgment as a matter of law, or alternatively, to vacate judgement on the jury verdict and for a new trial is denied.

**E N T E R:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

**DATE**: _____2/7/2012_____